# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan Humphrey Lefkow | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4586 | **DATE** | 2/13/2002 |
| **CASE TITLE** | Carol Kowalczyk vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]



**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Report and recommendation recommending that this case be reversed and remanded to the ALJ for further proceedings is hereby entered of record. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 1 4 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 23 |
| | Mail AO 450 form. | | 2/13/2002 | |
| ✓ | Copy to judge/magistrate judge. | | date mailed notice | |
| | IS | courtroom deputy's initials | | IS mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| CAROL KOWALCZYK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 00 C 4586 |
| | ) | |
| v. | ) | Judge Joan Humphrey Lefkow |
| | ) | |
| JO ANNE B. BARNHART,[1] | ) | Magistrate Judge |
| Commissioner of Social Security,[1] | ) | Martin C. Ashman |
| | ) | |
| Defendant. | ) | |



DOCKETED

FEB 1 4 2002

## REPORT AND RECOMMENDATION

Carol Kowalczyk seeks judicial review of the Commissioner's decision to deny

applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI"). On September 24, 1999, the Administrative Law Judge (the "ALJ") held that

Kowalczyk was not disabled based on Rule 201.18 of the Medical-Vocational Guidelines (the

"Grids"). Kowalczyk claims that the ALJ erred (1) by relying on Grid Rule 201.18, given

Kowalczyk's mental impairments; (2) by ignoring medical evidence regarding Kowalczyk's

physical and mental health; (3) by substituting his own opinions for those of the physicians; and

(4) by misconstruing Kowalczyk's daily activities and improperly ignoring facts regarding such

activities. Kowalczyk asks this Court to reverse the Commissioner's decision and instruct the

ALJ to award benefits or, in the alternative, to remand the case to the ALJ for further

proceedings.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Jo Anne B. Barnhart is
automatically substituted as defendant in place of Larry Massanari, the original defendant in this
case.

On appeal, the Commissioner concedes that the ALJ's reliance on Grid Rule 201.18 was inappropriate. Instead of reversing the Commissioner's decision and instructing the ALJ to award benefits, the Commissioner contends that this Court should remand the case to the ALJ to allow him an opportunity to remedy inconsistencies and other problems in the decision and to properly evaluate the effect of Kowalczyk's mental impairments on her ability to work. We agree.[2]

## I.  **Procedural Background**

Kowalczyk filed concurrent applications for DIB and SSI on November 25, 1996, with an onset date of July 1, 1991. (R. at 56, 245.) Kowalczyk claimed that she was disabled due to arthritis, anemia, and being a slow learner. (R. at 63.) On March 12, 1997, the Social Security Administration denied both applications. (R. at 40, 250.) Approximately three months later, on reconsideration, the Social Security Administration denied both applications, again. (R. at 46, 256.)

As per Kowalczyk's request, an ALJ hearing was scheduled. Kowalczyk, however, failed to appear at the hearing so her case was dismissed. (R. at 262-63.) On April 2, 1998, Kowalczyk appealed the dismissal order to the Appeals Council. (R. at 264.) The Appeals Council promptly set aside the dismissal order because Kowalczyk demonstrated good cause for missing the ALJ hearing, and a new ALJ hearing was scheduled on April 14, 1999. (R. at 274-75, 366.)

---

[2] This matter comes before this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1 for a report and recommendation.

At the April 1999 hearing, the ALJ elicited testimony from Kowalczyk, who was represented by counsel, and Susan Entenberg, a vocational expert. (R. at 367.) On September 24, 1999, the ALJ found Kowalczyk not disabled. (R. at 26.) Kowalczyk requested the Appeals Council to review the decision. The Appeals Council denied that request, thereby making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Kowalczyk now seeks review of that decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  **Factual Background**

### A.    **Kowalczyk's Testimony**

Kowalczyk was born on January 30, 1954, making her forty-five years old at the time of the hearing. (R. at 371.) She attended special education classes until age sixteen, but never attended high school. (R. at 372.) Instead of attending high school, Kowalczyk went to the Jewish Vocational Services Workshop, where she received vocational training. (R. at 100, 372-73.)

Between 1979 and 1991, Kowalczyk worked in food service, usually part-time. (R. at 67.) She washed dishes, cleaned tables, and served food. (R. at 374-75.) At times, Kowalczyk felt as if she worked too slow. (R. at 375-76.) Between 1991 and 1996, Kowalczyk took care of her mother, who was ill. (R. at 377.) Until her mother passed away in 1996, Kowalczyk cooked meals, did housework, and helped attend to her mother's personal needs. (R. at 377.)

Kowalczyk testified that she had not worked since 1996 in part due to her arthritis and diarrhea. (R. at 377.) The arthritis, which was becoming worse, affected her ability to move

- 3 -

both of her knees as well as her back when she bent a lot. (R. at 377, 385.) She experienced difficulty while walking up and down stairs, but mostly while walking up stairs. (R. at 378.) She could walk about three blocks before needing to rest. (R. at 383-84.) She could stand for about six or seven hours before feeling pain. (R. at 384.) A week prior to the ALJ hearing, Kowalczyk started physical therapy to treat the arthritis in her knees. (R. at 379.)

Kowalczyk experienced diarrhea whenever she felt nervous or worried about something. (R. at 382.) For example, she would have diarrhea after people yelled at her or when she felt rejected. (R. at 382.) She had diarrhea as often as two to three times per day, sometimes every day of the week. (R. at 382, 386.) Occasionally, she would go for a week without having any diarrhea. (R. at 386.) Each episode of diarrhea would require Kowalczyk to spend around twenty minutes in the bathroom. (R. at 388-89.)

Kowalczyk went grocery shopping, prepared and cooked her own meals, and did her own housework. (R. at 380-81, 388.) She was not licensed to drive so she took public transportation or traveled with friends who could drive. (R. at 381.)


B.     Medical Evidence

The medical evidence included reports from 1984 to 1991, apparently written by Dr. Elizabeth Waldron, Kowalczyk's treating physician at the time. During this time, Kowalczyk periodically complained of knee pain, chest pain, and diarrhea, among other things. (R. at 194-204.) At times, Waldron prescribed medications to relieve Kowalczyk's symptoms.

Dr. Janet Forbes, Kowalczyk's present treating physician, began treating Kowalczyk in 1993. In February 1993, Dr. Forbes diagnosed Kowalczyk with costochondritis (pain pertaining

to cartilage in the chest). (R. at 193.) And in April 1993, Dr. Forbes diagnosed Kowalczyk with

episodic dizziness. (R. at 193.) Between April 1993 and August 1995, Kowalczyk complained

of chest pain, back pain, and knee pain. (R. at 179, 183, 188-89.) In 1995 and 1996, Kowalczyk

complained of diarrhea. (R. at 176-78.) On March 4, 1996, Dr. Forbes noted that Kowalczyk

had good sphincter tone. (R. at 177.)

On May 8, 1996, Kowalczyk arrived at Dr. Eileen Meyer's office for a psychological

examination. (R. at 131.) Dr. Meyer noted that Kowalczyk was able to provide background

information about herself. Kowalczyk stated that she was taking iron tablets and Motrin three

times per day as needed. (R. at 132.) Dr. Meyer administered the WAIS-R and the Peabody

Picture Vocabulary Test. The WAIS-R test revealed that Kowalczyk had a full scale I.Q. of

seventy-four, which placed Kowalczyk in the category of Borderline Mentally Retarded. (R. at

132.) The Peabody Picture Vocabulary Test revealed a standard score of seventy, which placed

Kowalczyk in the lowest two percent of the population with a Stanine Score of one and an age

equivalent of twelve years and nine months. (R. at 132-33.) Dr. Meyer opined that Kowalczyk

was capable of managing her own funds. (R. at 133.)

Two days later, Kowalczyk arrived at Dr. Edith Panopic's office for an Internal Medicine

Examination. (R. at 134.) Kowalczyk complained of anemia, arthritis, and back pain. (R. at

134.) She was taking iron pills to treat the anemia and she no longer experienced any symptoms.

She was taking Motrin to treat "the arthritis in the chest" and she experienced no significant

problems. Kowalczyk stated that she had been experiencing back pain during the past year. She

had no numbness or tingling in the extremities and she denied using an ambulatory aid. (R. at

135.) Kowalczyk also complained of right knee pain and mentioned that in 1984 calcium was

removed from around her knee cap. (R. at 135.) Dr. Panopic noticed tenderness at the costochondral area, but that Kowalczyk's range of motion was full in all joints of the upper as well as lower extremities. (R. at 136.) Kowalczyk had no limited movement of the lumbar spine. (R. at 137.)

On May 23, 1996, Dr. Donald Cochran completed a Psychiatric Review Technique. Dr. Cochran determined that Kowalczyk did not meet listing 12.05 because her I.Q. of seventy-four slightly restricted her daily activities, slightly affected her social functioning, and rarely affected her concentration. (R. at 146.) Dr. Cochran found insufficient evidence of deterioration in work. (R. at 146.) Dr. Cochran also completed a Mental Residual Functional Capacity Assessment. He found Kowalczyk to be markedly limited in understanding instructions and in carrying out detailed instructions, and to be moderately limited in maintaining concentration and attention for extended periods of time, in performing activities within a schedule, and in interacting with the general public. (R. at 148-49.) He concluded that Kowalczyk was capable of simple, routine tasks. (R. at 150.)

On May 29, 1996, a physician completed a Physical Residual Functional Capacity Assessment, finding nothing significant about Kowalczyk's physical impairments. (R. at 158.) Dr. Sanjay Bharti conducted an Internal Medicine Consultative Examination on February 13, 1997. Kowalczyk mentioned that she could walk fine but that she had occasional difficulty climbing stairs. She denied any history of back pain or any other joint problems. (R. at 205.) Kowalczyk also stated that she quit working because her mother became ill. (R. at 206.) Dr. Bharti observed that Kowalczyk's gait was normal. She could squat and walk on her toes and heels, and she had full range of motion in all of her joints. (R. at 206-07.) Based on the results

of a "mini-mental exam," Dr. Bharti concluded that Kowalczyk could manage her own funds. (R. at 207.)

Less than one month later, a physician completed a Physical Residual Functional Capacity Assessment, finding nothing significant about Kowalczyk's physical impairments. (R. at 221.) On March 5, 1997, Dr. Erika Altman completed a Psychiatric Review Technique. Dr. Altman determined that Kowalczyk did not meet listing 12.05 because her I.Q. of seventy-four slightly restricted her daily activities, slightly affected her social functioning, and often affected her concentration. (R. at 230.) Dr. Altman found insufficient evidence of deterioration in work. (R. at 230.) Dr. Atlman also completed a Mental Residual Functional Capacity Assessment under listing 12.05. She determined that Kowalczyk had no marked limitations, but that she was moderately limited in understanding instructions, in carrying out detailed instructions, and in maintaining concentration and attention for extended periods of time. (R. at 211-12.) Dr. Altman concluded that Kowalczyk was "capable of performing substantial gainful activity commensurate with her intellectual ability and past experiences." (R. at 213.)

Dr. Forbes's medical reports between 1997 and 1998 indicated that Kowalczyk periodically complained of back pain and diarrhea. (R. at 298, 300.) In September 1997 and September 1998, Dr. Forbes noted that Kowalczyk had good sphincter tone. (R. at 296, 292.) Based on a September 1998 physical exam, Dr. Forbes described Kowalczyk as a "healthy female." (R. at 292.)

In January 1999, Kowalczyk complained of diarrhea while being examined by Dr. Forbes. (R. at 291.) Dr. Forbes noted in her report that Kowalczyk had a colonoscopy, which was

normal, and that Kowalczyk denied experiencing any abdominal pain. (R. at 291.) Dr. Forbes recommended that Kowalczyk take Imodium and maintain a high-fiber diet.

Dr. Waldron wrote a letter to Kowalczyk's attorney in February 1999. In the letter, Dr. Waldron opined that Kowalczyk was mentally retarded with the I.Q. of a third grader. She also averred that Kowalczyk was very shy and anxious. (R. at 323.) Dr. Waldron believed that it was "absolutely unreasonable to think that [Kowalczyk] could function in an independent workplace as she would qualify only for the most menial job and then with a great deal of supervision." (R. at 323.)

On May 13, 1999, Dr. Forbes completed a Mental Impairment Questionnaire. She identified Kowalczyk's symptoms as poor memory, loss of intellectual ability, psychomotor agitation or retardation, and difficulty thinking or concentrating. (R. at 340.) She believed that Kowalczyk's psychiatric condition exacerbated her experience of pain or other physical symptoms. Furthermore, Dr. Forbes concluded that Kowalczyk would have difficulty working at a regular job on a sustained basis, but that she could manage her own funds. (R. at 342, 343.) According to Dr. Forbes, Kowalczyk's mental condition slightly limited her daily activities, moderately limited her social functioning, often resulted in deficiencies of concentration, and once or twice resulted in episodes of deterioration in work. (R. at 343.)

Dr. Forbes also completed a Physical Residual Functional Capacity Questionnaire. She listed Kowalczyk's symptoms as knee pain with increased activity and inability to bend at the knees. (R. at 344.) Dr. Forbes deduced that Kowalczyk's pain would rarely interfere with her concentration and attention, and she opined that Kowalczyk was incapable of even low stress jobs. (R. at 345.) Kowalczyk could sit for four hours and stand for two hours in an eight-hour

workday. (R. at 346.) She could walk about three or four blocks without rest or severe pain. And she could lift less than ten pounds frequently, ten pounds occasionally, but never twenty pounds. (R. at 346.) Dr. Forbes commented that Kowalczyk would need a job where she could shift from sitting to standing at will. (R. at 345.)

On June 14, 1999, Dr. Thomas Peatman, a treating physician, completed a Physical Residual Functional Capacity Questionnaire. He indicated that Kowalczyk suffered from knee pain, which was confirmed by an x-ray. (R. at 351.) Dr. Peatman opined that Kowalczyk's pain would often interfere with her concentration and attention. However, he concluded that Kowalczyk was capable of low stress jobs and that her impairments would, on average, cause her to be absent from work about once a month. (R. at 352, 354.) Kowalczyk could walk three blocks without rest or severe pain. She could sit for at least six hours and walk for less than two hours in an eight-hour workday, and she could frequently lift less than ten pounds, occasionally lift twenty pounds, but never lift fifty pounds. (R. at 353.) Dr. Peatman did not believe that Kowalczyk would need a job where she could shift from sitting to standing at will. (R. at 352.)

### C.    Entenberg's Testimony

Based on Kowalczyk's testimony and the medical evidence, Entenberg classified Kowalczyk's past work as unskilled and light with a moderate stress level. (R. at 391-92.) When asked by the ALJ for examples of unskilled and light jobs with a low stress level, Entenberg indicated housekeeping positions and some security guard positions, which would not be high stress. (R. at 392.) In the Chicago metropolitan area, Entenberg opined that 10,000 such housekeeping positions existed and 2000 such security guard positions existed.

If an individual had to take up to three unscheduled breaks, four times per week, because of diarrhea, and the individual would be on break for about twenty minutes, Entenberg believed that the individual could not sustain employment as a housekeeper or security guard. (R. at 393.) If an individual had a markedly limited ability to carry out detailed instructions, a moderately limited ability to maintain concentration and attention for extended periods of time, a moderately limited ability to perform activities within a schedule, and a moderately limited ability to interact appropriately with the general public, Entenberg opined that the individual "may have some problems performing [work as a housekeeper or security guard]." (R. at 398-99.) Further questioning by the ALJ caused Entenberg to clarify this answer with respect to the housekeeping position by stating, "You'd have to add in more moderates." (R. at 402, 403.) Further questioning by Kowalczyk's attorney caused Entenberg to state that an individual with a full scale I.Q. of seventy-four and a Stanine score of one could "do the housekeeping job." (R. at 400.)

### III.   The ALJ's Decision

After considering the testimony and medical evidence, the ALJ decided that Kowalczyk was not disabled based on Grid Rule 201.18. (R. at 25.) The ALJ found that Kowalczyk did not perform substantial gainful activity at any time relevant to the decision. The ALJ then stated that Kowalczyk had severe impairments of arthritis and borderline intellectual functioning, which imposed a "significant work-related limitation of function." (R. at 18.) However, neither these impairments nor the combination of these impairments met or equaled a listed impairment. *See* 20 C.F.R. ch. III, pt. 404, subpt. 4, app. 1. For example, Kowalczyk's borderline intellectual

functioning was not accompanied by the necessary degree of functional limitation as required under Listing 12.05. (R. at 18.)

The ALJ determined that, considering Kowalczyk's limitations, Kowalczyk was capable of standing and walking for two hours in an eight-hour workday, lifting ten pounds occasionally, and lifting five pounds frequently. (R. at 18.) He noted the absence of any objective evidence to explain the medical basis of the diarrhea or to support the assertion of nerve problems. He also commented on the lack of significant clinical or objective findings of back or knee pain. (R. at 19-21.) Giving Kowalczyk "the benefit of the doubt," however, the ALJ stated that Kowalczyk was capable of performing "a limited range of sedentary work" due to her arthritis. (R. at 22.)

With respect to Kowalczyk's borderline intellectual functioning, the ALJ narrated the symptoms listed on Dr. Forbes's May 1999 Mental Impairment Questionnaire: poor memory, loss of intellectual ability, psychomotor agitation or retardation, and difficulty thinking or concentrating. He also recounted the limitations placed by Dr. Forbes on Kowalczyk's functioning due to her borderline intellectual functioning: slightly limited daily activities, moderately limited social functioning, often deficiencies of concentration, and episodes of deterioration in work occurring once or twice. (R. at 22.) The ALJ appended a Psychiatric Review Technique Form to his decision, which the ALJ believed was fairly consistent with Dr. Forbes's opinions. He found that Kowalczyk's borderline intellectual functioning placed slight limitations on her daily activities, slight limitations on her social functioning, never resulted in deficiencies of concentration, and once or twice resulted in episodes of deterioration in work. (R. at 28-29.) He concluded that Kowalczyk's borderline intellectual functioning only

slightly limited her social functioning considering that Kowalczyk regularly visited with her sister and boyfriend. (R. at 23.)

The ALJ considered Dr. Waldron's opinions as expressed in the February 1999 letter, but the ALJ did not accept them. He surmised that Dr. Waldron's opinions were given out of sympathy (in an effort to assist Kowalczyk obtain disability benefits) rather than as a result of the objective medical evidence. (R. at 23.) Moreover, Dr. Waldron's opinions as to mental retardation, the ALJ stated, were outside of Dr. Waldron's area of expertise. (R. at 23.)

Due to Kowalczyk's ability to perform only sedentary work, the ALJ held that Kowalczyk could not perform her past relevant work, which was light work. And based on Kowalczyk's age, education, previous work experience, and residual functional capacity for the "full range of sedentary work," the ALJ relied on Grid Rule 201.18 to find Kowalczyk not disabled. (R. at 23-24.) The ALJ's findings were as follows:

1. The claimant meets the disability insured status at all times relevant to this decision.

2. There is no evidence of work activity since the alleged onset date in this case.

3. The medical evidence establishes that the claimant has the following medically determinable impairment: arthritis. The claimant's impairment significantly limits the ability to perform basic work activities and is therefore "severe."

4. The claimant's impairment neither meets the requirements nor equals the level of severity contemplated for any impairment listed in Appendix 1 to Subpart P, Regulations No. 4.

5. The claimant's allegations of disabling symptoms and limitations are not considered fully credible for the reasons set forth in the body of this decision.

6. The claimant has the residual functional capacity to perform the requirements of work except for: standing and/or walking for more than a total of two hours in an eight-hour workday; and lifting more than ten pounds occasionally or five pounds frequently.

7. The claimant is unable to perform any past relevant work.

8. The claimant has the residual functional capacity to perform the full range of sedentary work.

9. The claimant, born January 30, 1954, is forty-five years old, which is classified as a younger individual.

10. The claimant has a limited education.

11. The claimant has an unskilled past relevant work history.

12. In view of the claimant's vocational characteristics and a residual functional capacity for the full range of sedentary work, Medical-Vocational Rule 201.18 applies and directs a finding of "not disabled."

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

(R. at 24-25.)

# IV. Discussion

## A. Standard of Review

Judicial review of the Commissioner's decision to deny benefits encompasses an

assessment of the factual basis and legal basis of that decision. *Cannon v. Apfel*, 213 F.3d 970,

974 (7th Cir. 2000); *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999); *Jones v. Shalala*, 10 F.3d

522, 523 (7th Cir. 1993). With regard to the ALJ's factual findings, the court's role is limited: if

the ALJ's findings are supported by substantial evidence, then the court must affirm the ALJ's

decision. *Allen v. Sullivan*, 977 F.2d 385, 389 (7th Cir. 1992). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Put another way, it is more than a mere scintilla of the evidence, but less than the greater weight of the evidence. *Id.*; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). In determining whether substantial evidence exists, the court cannot reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the ALJ. *Jones*, 10 F.3d at 523.

The court reviews the ALJ's application of law without deference and without regard to the volume of medical evidence that supports the ALJ's findings. *White*, 167 F.3d at 373. If the ALJ's application of law is not properly grounded, then remand or reversal is warranted. *Cook v. Massanari*, No. 00 C 4157, 2001 WL 755145, at *7 (N.D. Ill. July 2, 2001); *Gavin v. Heckler*, 620 F. Supp. 999, 1000 (N.D. Ill. 1985).

### B.    Mental Impairments

Kowalczyk's principal arguments on appeal involve the ALJ's treatment of Kowalczyk's borderline intellectual functioning. By virtue of this impairment, Kowalczyk argues, the ALJ should not have relied on Grid Rule 201.18 to find that Kowalczyk was not disabled. Kowalczyk also criticizes the ALJ for ignoring the opinions of Drs. Waldron and Forbes, for substituting his own opinion for that of a mental health professional, and for misconstruing evidence of Kowalczyk's daily activities to refute the medical evidence.

Use of the Grids to determine whether a claimant is capable of performing work in the economy is inappropriate where the claimant suffers from exertional limitations and nonexertional limitations that "are so severe as to limit the range of work that [the claimant] can perform." *Herron v. Shalala*, 19 F.3d 329, 336 (7th Cir. 1994); *Nelson v. Secretary of Health & Human Servs.*, 770 F.2d 682, 685 (7th Cir. 1985). In such a case, the Grids can provide a framework to guide the ALJ, but the ALJ should use the services of a vocational expert to determine "what work, if any, the claimant is capable of performing." *Nelson*, 770 F.2d at 684; SSR 83-14.

Here, the ALJ relied solely on Grid Rule 201.18 to make his disability determination despite the existence of an entire line of evidence relating to Kowalczyk's borderline intellectual functioning, which SSR 83-14 lists as a nonexertional impairment. The entire line of evidence came from Drs. Waldron, Forbes, Meyer, Cochran, and Altman, all of whom concluded that Kowalczyk's borderline intellectual functioning was so severe as to limit the range of work that Kowalczyk could perform. (R. at 132-33, 148-50, 211-13, 323, 343.) Dr. Cochran, for instance, determined that Kowalczyk was limited to performing, at most, simple and routine tasks. (R. at 150.) The evidence also came from Kowalczyk, who testified, for example, as to her inability to maintain a fast pace at work. (R. at 375.)

We agree with Kowalczyk that this entire line of evidence precludes the ALJ from relying solely on Grid Rule 201.18 to find Kowalczyk not disabled. *See Foreman v. Callahan*, 122 F.3d 24, 26 (8th Cir. 1997) ("This Court . . . has 'previously concluded that borderline intellectual functioning . . . is a significant nonexertional impairment that must be considered by a vocational expert.'" (quoting *Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997))). Grid Rule 201.18 does

not accurately describe Kowalczyk's particular abilities and limitations, and therefore it cannot constitute substantial evidence to support the ALJ's decision. If there were any doubt regarding the propriety of the ALJ's reliance on Grid Rule 201.18 to find Kowalczyk not disabled, the ALJ's determination that Kowalczyk's "borderline intellectual functioning . . . impose[d] [a] significant work-related limitation of function" allays that uncertainty. (R. at 18.) By making this determination, the ALJ himself removed this case from the Grids and placed it within the province of a vocational expert.[3]

Kowalczyk sets forth a number of problems with the ALJ's treatment of the evidence submitted by Drs. Waldron and Forbes. In terms of Dr. Waldron, the ALJ "did not accept" the medical opinion that Kowalczyk was "'unemployable' due to mental retardation" because Kowalczyk worked in food service for five years before she quit to care for her mother. (R. at 23.) The ALJ also stated that Dr. Waldron's opinion was not based on any real evidence that Kowalczyk was incapable of working. (R. at 23.) Furthermore, the ALJ averred that Dr. Waldron lacked the expertise to opine that Kowalczyk was disabled due to mental retardation. (R. at 23.)

Kowalczyk correctly points out that administrative law judges are required to give good reasons for the weight they give to the opinions of treating sources. *See Knight v. Chater*, 55 F.3d 309, 313-14 (7th Cir. 1995); 20 C.F.R. §§ 404.1527(d), 416.927(d). Here, the ALJ gave three good reasons, all of which concerned certain of the enumerated factors listed in 20 C.F.R. § 404.1527(d)(2)–(5) and 20 C.F.R. § 416.927(d)(2)–(5) (listing as factors the nature and extent

---

[3] We note that the ALJ described Kowalczyk's borderline intellectual functioning as a severe impairment in the body of the decision, but failed to include it as such in his findings. (R. at 18, 24-25.)

of the treatment relationship, supportability, consistency, and specialization). Accordingly, we reject Kowalczyk's challenge as to Dr. Waldron.

In May 1999, Dr. Forbes diagnosed Kowalczyk with poor memory, loss of intellectual ability of fifteen points or more, psychomotor agitation or retardation, and difficulty thinking or concentrating. (R. at 340.) She opined that Kowalczyk's borderline intellectual functioning slightly limited her daily activities, moderately limited her social functioning, often resulted in deficiencies of concentration, and once or twice caused episodes of deterioration in work. (R. at 343.) In his decision, the ALJ found that Kowalczyk's borderline intellectual functioning slightly limited her daily activities, slightly limited her social functioning, never resulted in deficiencies of concentration, and once or twice caused episodes of deterioration in work. (R. at 28-29.) The ALJ explained that, because of Kowalczyk's ability to maintain relationships with her sister and boyfriend, he disagreed with Dr. Forbes's opinion that Kowalczyk was moderately limited in social functioning. (R. at 23.) The ALJ, however, did not explain why he disagreed with Dr. Forbes's opinion that Kowalczyk's borderline intellectual functioning often resulted in deficiencies of concentration. (R. at 23.)

The case law makes clear that an administrative law judge may not substitute his judgment for that of a physician. *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996); *Wilder v. Chater*, 64 F.3d 335, 336-37 (7th Cir. 1995). But as far as we can tell, the ALJ transgressed this rule when discounting Dr. Forbes's social functioning opinion. The ALJ did not expressly rely on or cite to any medical evidence in the record to support his conclusion that one who visits with a sibling and a boyfriend cannot be moderately limited in social functioning, which leads this Court to believe that this conclusion was based on conjecture. While the ALJ need not

discuss each and every piece of medical evidence in the record, he must "sufficiently articulate his assessment of the evidence to 'assure[] us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.'" *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)). Since we cannot discern what, if any, medical evidence the ALJ relied on to discount Dr. Forbes's social functioning opinion, we cannot sustain the ALJ's conclusion.

As the ALJ failed to provide any basis for discounting Dr. Forbes's opinion that Kowalczyk's borderline intellectual functioning often resulted in deficiencies of concentration, this part of the ALJ's decision cannot be sustained, either. The ALJ must provide good reasons for rejecting Dr. Forbes's opinion. *Knight*, 55 F.3d at 313-14; 20 C.F.R. §§ 404.1527(d), 416.927(d).

Lastly, we find that the ALJ failed to adequately address Kowalczyk's alleged inability to handle stress. The ALJ's evaluation of this nonexertional impairment consists of one sentence: "The alleged nerve problems simply are not substantiated by the record." (R. at 22.) This falls below the minimal level of articulation that is necessary for meaningful judicial review. *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). At a minimum, the ALJ should have discussed the pertinent and different opinions of Drs. Forbes and Peatman. (*See* R. at 345, 352.)

### C.     Physical Impairments

Kowalczyk's collection of arguments relating to the ALJ's treatment of medical evidence concerning arthritis, back pain, knee pain, and diarrhea will be addressed succinctly as a consequence of the perplexing and unintelligible way in which Kowalczyk has presented the

arguments in her brief. In general, Kowalczyk argues that the ALJ dismissed the opinions of

treating physicians on issues relating to Kowalczyk's arthritis, back pain, knee pain, and diarrhea

without providing "a reasoned medical basis." (Kowalczyk's Mot. Summ. J. at 11-15.) We

cannot tell which parts of which opinions Kowalczyk refers to. Regardless, a review of the ALJ's

entire decision reveals that this argument is baseless. The ALJ provided many reasons for his

conclusions regarding the severity of Kowalczyk's arthritis, back pain, knee pain, and diarrhea,

and he expressly relied on Kowalczyk's testimony and several of the medical opinions, including

Dr. Forbes's opinions. (R. at 18-22.) The ALJ found Kowalczyk to be capable of standing and

walking for two hours in an eight-hour workday, lifting ten pounds occasionally, and lifting five

pounds frequently. Kowalczyk indicates no part of any medical opinion, which the ALJ

dismissed, to rebut these findings. The ALJ found that Kowalczyk did not have disabling

diarrhea. Kowalczyk indicates no part of any medical opinion, which the ALJ dismissed, to rebut

this finding.

We also reject Kowalczyk's argument that the ALJ improperly relied on evidence of

Kowalczyk's daily activities. Insofar as the ALJ used this evidence to assist him in assessing

Kowalczyk's physical limitations, the ALJ was not in error. *Cf. Rousey v. Heckler*, 771 F.2d

1065, 1070 (7th Cir. 1985). After all, 20 C.F.R. § 404.1512 and 20 C.F.R. § 416.912

contemplate that administrative law judges will use such evidence for this purpose.[4]

---

[4] In this section of her brief, Kowalczyk inserts block quotations from SSR 96-7p and 20
C.F.R. § 416.927 dealing with the ALJ's duty to recontact physicians or the claimant under
certain circumstances. (*See* Kowalczyk's Mot. Summ. J. at 11, 13.) We refrain from discussing
these principles because Kowalczyk has failed to adequately articulate how these principles apply
to the circumstances of this case.

### D.     Reversal with an Award of Benefits

The final point of contention between the parties is whether this Court should remand the case to the ALJ for further proceedings or instruct the ALJ to award benefits. A remand is appropriate where "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). On the other hand, an instruction to award benefits is appropriate where "substantial evidence on the record as a whole indicates that the claimant is disabled, and the weight of the evidence indicates that a remand would only delay the receipt of benefits while serving no useful purpose." *Bell v. Bowen*, 658 F. Supp. 533, 538 (N.D. Ill. 1987).

Certainly this is not a case that calls for an instruction to award benefits. The record is devoid of any determination regarding the range of sedentary work that Kowalczyk is capable of performing considering her mental impairments. (*See* R. at 24-25.) The factual findings associated with this determination must be resolved by the ALJ. Dr. Cochran concluded that Kowalczyk was capable of performing simple, routine tasks. (R. at 150.) Dr. Altman determined that Kowalczyk was "capable of performing substantial gainful activity commensurate with her intellectual ability and past experiences." (R. at 213.) Dr. Forbes opined that Kowalczyk would have difficulty working at a regular job and that Kowalczyk was incapable of even low stress jobs. (R. at 342, 345.) Dr. Waldron, whose opinions were discounted by the ALJ, believed that Kowalczyk was "unemployable" but that she was capable of performing "the most menial job[s]" with "a great deal of supervision." (R. at 323.) Dr. Peatman concluded that Kowalczyk was capable of low stress jobs and that her impairments would, on average, cause her to be absent from work about once a month. (R. at 352, 354.) Of course, Kowalczyk worked in

food service from 1979-1991. Throw in the fact that no physician, with the exception of possibly Dr. Waldron, has expressly found Kowalczyk to be disabled. Given this record, an instruction to award benefits would be improper. *See Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993); *O'Connor v. Sullivan*, 938 F.2d 70, 73-74 (7th Cir. 1991).

Kowalczyk's assertion that Entenberg's testimony commands an instruction to award benefits is in error. Entenberg's testimony as to the number of jobs that an individual with a markedly limited ability to carry out detailed instructions, a moderately limited ability to maintain concentration and attention for extended periods of time, a moderately limited ability to perform activities within a schedule, and a moderately limited ability to interact appropriately with the general public is equivocal and ambiguous. (R. at 398-99.) At one point Entenberg opined that such an individual "may have some problems performing [work as a housekeeper or security guard]." (R. at 399.) Later, upon learning that the foregoing limitations were not all from one category of mental activity, Entenberg clarified her answer with respect to the housekeeping position by stating, "You'd have to add in more moderates." (R. at 402.) An additional problem with Entenberg's testimony is that she opined on the number of jobs available to Kowalczyk assuming that she was capable of performing light work, because the ALJ determined that Kowalczyk was capable of performing only sedentary work. For these reasons, Entenberg's testimony does not justify an award of benefits.

On remand, the ALJ must, in addition to reevaluating Dr. Forbes's May 1999 Mental Impairment Questionnaire and more thoroughly discussing the evidence relating to Kowalczyk's social functioning and ability to handle stress, determine Kowalczyk's residual functional capacity in light of her exertional and nonexertional limitations. In addition, the ALJ should

contact a vocational expert to determine the number of jobs that Kowalczyk is capable of performing considering all of her limitations. We find that Kowalczyk's allegations of bias by the ALJ are groundless so we place no restrictions on the Commissioner's selection of an administrative law judge on remand. *See Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996); *Travis v. Sullivan*, 985 F.2d 919, 924 (7th Cir. 1993). And, because Kowalczyk has not provided this Court with sufficient justification to interfere with the Commissioner's selection of a vocational expert on remand, we place no such restriction on the Commissioner. *See Travis*, 985 F.2d at 924.

## V. Conclusion

We recommend that this case be reversed and remanded to the ALJ for further proceedings as stated above.

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** February 13, 2002.

Written objections to any finding of fact, conclusion of law, or the recommendation for disposition of this matter must be filed with the Honorable Wayne R. Andersen within ten (10) days after service of this Report and Recommendation. *See* FED. R. CIV. P. 72(b). Failure to object will constitute a waiver of objections on appeal.

Copies have been mailed to:

FREDERICK J. DALEY, Esq.             JAMES P. FIEWEGER
Frederick J. Daley, Ltd.             Assistant United States Attorney
727 South Dearborn Street            219 South Dearborn Street
Suite 613                            Suite 500
Chicago, IL  60605                   Chicago, IL  60604

Attorney for Plaintiff               Attorney for Defendant